IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| V. | § | CASE NO. 4:14CR155 |
| | § | |
| GARY DON FRANKS | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Now before the Court is Defendant's Motion to Suppress Unlawfully Obtained Evidence (Dkt. 28), the matter having been referred to the undersigned. Having considered the evidence and testimony presented at the April 27, 2015 hearing, the Court recommends that the motion be DENIED.

According to the materials before the Court, Denton County Sheriff's deputies executed a search warrant for stolen property and narcotics at 5059 US Hwy 377 S., in Aubrey, Texas on May 22, 2014. During the execution of the Aubrey warrant, Defendant Gary Don Franks drove up in a green Dodge truck with a passenger, Megan Lindley. Defendant was named in the Aubrey warrant as a person who had traded methamphetamine for stolen firearms and was recognized by law enforcement upon arrival.

When Denton County Sheriff's Officer Marco DeLeon saw Defendant reach down between the console of his truck, he removed Defendant from his vehicle at gunpoint and handcuffed him. Defendant's passenger, Lindley, subsequently told officers that the night before she had seen Defendant in possession of a large amount of methamphetamine in a black laptop style bag.

1

Sergeant Sean Clary and another officer then spoke with Defendant, and, when asked about Lindley's claims, Defendant told them that the substance in the black bag was MSM, a horse tranquilizer. According to the Government, Defendant then provided voluntary consent for investigators to travel to a residence at 217 Stirrup Road in Tioga, Texas so he could show them the MSM. Defendant declined consent for officers to search his green truck. It is undisputed that Defendant was not read his *Miranda* warnings or formally arrested while at the Aubrey property or at any time while en route to the Stirrup Road property.

Officers drove approximately 30 minutes to the residence at 217 Stirrup Road with Defendant handcuffed in the backseat. When they arrived, Defendant used his keys to open the door. After officers performed a protective sweep of the residence, Defendant led the officers to a bedroom where he searched a roll-top desk and lockbox looking for the MSM. As Defendant looked for the MSM, officers saw what they believed to be drug paraphernalia and other contraband in plain view. At that time, Clary asked Defendant if he could search some other black bags that were near the desk. Defendant then withdrew his consent to search. Officers immediately left the house and transported Defendant to the Cooke County Jail for an investigative hold. Clary remained at the residence to secure it pending the issuance of search warrants, and search warrants were subsequently obtained and executed for the Stirrup Road residence and Defendant's green Dodge truck.

Defendant is charged in this matter with possession with the intent to distribute or dispense methamphetamine in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm by a felon in

violation of 18 U.S.C. § 922(g)(1). In his motion to suppress, Defendant claims that his detention upon arrival at the Aubrey location violated his Fourth Amendment rights against unreasonable searches and seizures and that the search warrants obtained in this case were defective. Defendant seeks to suppress a gun, ammunition, methamphetamine and other drug paraphernalia discovered after the execution of the search warrant at the residence at Stirrup Road, as well as methamphetamine and a firearm discovered after the execution of a search warrant for his truck.

### EVIDENCE PRESENTED

At the suppression hearing, the Government offered the testimony of Officer Marco DeLeon with the Denton County's Sheriff's Office, Lieutenant Sean Clary with the Denton County Sheriff's Office, and Investigator Karissa Flowers with the Denton County Sheriff's Office. Defendant called Pamela Ogden, a family friend who was at the Stirrup Road property the day the residence was searched.

Defendant attached to his motion the three search warrants involved in this case, as well as the Incident/Investigation report of the Denton County Sheriff's Office. Dkt. 28-1 - 28-4.

### ANALYSIS

First, Defendant challenges his prolonged detention from the time he arrived at the Aubrey, Texas property until he was taken to the Cooke County Jail several hours later. It is undisputed that Defendant was not free to leave during this period and was handcuffed most, if not all, of the time.[1]

---

[1] According to the testimony at the hearing, at some point the handcuffs were moved from Defendant's back to his front and may have been removed to allow Defendant to use the restroom.

The Fourth Amendment permits officers to stop and question an individual, even without probable cause where they have "reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *see also United States v. Cortez*, 449 U.S. 411, 417 (1981); *Terry v. Ohio*, 392 U.S. 1 (1968). As part of such a stop, officers may handcuff individuals if the situation warrants. As explained by the Fifth Circuit:

> Under *Terry*, officers may briefly detain an individual on the street for questioning, without probable cause, when they possess reasonable, articulable suspicion of criminal activity. *See generally United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc) (discussing and applying *Terry*). In order to ensure their safety during the stop, police may frisk the subject for weapons that they reasonably suspect he may carry. *Michelletti*, 13 F.3d at 840. The purpose of the frisk is to afford an officer "the opportunity to protect himself from attack by a hostile suspect." *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed.2d 612 (1972). Accordingly, if the situation warrants it, officers may take further steps in connection with a *Terry* frisk, including handcuffing, as long as they are not "unreasonable in failing to use less intrusive procedures to safely conduct their investigation." *United States v. Jordan*, 232 F.3d 447, 450 (5th Cir. 2000).

*U.S. v. Scroggins*, 599 F.3d 433, 440-41 (5th Cir. 2010).

As to reasonable suspicion, the Fifth Circuit has further explained it as follows:

Our assessment of reasonable suspicion is based on the totality of the circumstances. Furthermore, reasonable suspicion can vest through the collective knowledge of the officers involved in the search and seizure operation. The collective knowledge theory for reasonable suspicion applies so long as there is "some degree of communication" between the acting officer and the officer who has knowledge of the necessary facts. Reasonable suspicion can be formed by a confidential informant's tip so long as the information is marked by "indicia of reliability." In *United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007), we discussed a number of the factors applied in determining whether a tip provides reasonable suspicion, including: "the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which

4

the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale."

*United States v. Powell,* 732 F.3d 361, 369-70 (5th Cir. 2013).

At the hearing, Investigator Marco DeLeon testified that he saw Defendant drive up to the Aubrey, Texas property during the execution of the warrant. According to DeLeon, he had been previously informed that Defendant drove a green truck and he had seen photographs of Defendant prior to the execution of the warrant. DeLeon also testified that it was known to him - as reflected in the Aubrey search warrant affidavit (*see* Dkt. 28-2 at 6) - that Defendant was accused of trading methamphetamine for stolen property at the Aubrey property. DeLeon testified that he saw Defendant reach down for something in the truck upon approach and, to ensure officer safety, immediately drew his weapon and removed Defendant from the truck, placing him in handcuffs.

DeLeon testified that he had previously spoken with narcotics officers who informed him that Defendant was known to have possessed weapons, impersonated officers, and trafficked in narcotics. According to DeLeon, Defendant's arrival at the premises in the middle of the execution of the search warrant in which he was implicated was "an intense situation." Based on this testimony, the Court finds that it was not unreasonable for officers to handcuff Defendant to protect themselves during the execution of the warrant at the Aubrey location.

The Court further finds that, given the totality of the circumstances, there was a reasonable suspicion of criminal activity to justify the continued stop and restraint of Defendant. Primarily, as previously noted, Defendant was named in the search warrant affidavit as an individual with whom

stolen items were traded. His presence at the Aubrey premises (where stolen items were suspected to have been kept) certainly could lead to a suspicion that his reasons for being there may be connected to criminal activity. More importantly, according to the testimony presented, after Defendant was handcuffed and removed from the truck, his passenger, Megan Lindley, informed officers that she had seen him the night before with a black bag containing methamphetamine. Handcuffing Defendant while officers were investigating the location of such methamphetamine, given Defendant's history known to them, was reasonable and the least intrusive manner of ensuring officer safety while they conducted their investigation.

Law enforcement knew of Defendant's criminal history, and such is critical to the Court's analysis of the totality of the circumstances here. Officer DeLeon, who initially handcuffed Defendant, and Sergeant Clary (now Lieutenant Clary), who spoke with Defendant, both testified that they were familiar with Defendant's name and criminal history, and there was sufficient collective knowledge of the potential danger posed by Defendant's presence at the search warrant location. To the Denton County law enforcement community, Gary Don Franks was notorious.

Megan Lindley's report to another officer regarding Defendant's possession of methamphetamine in a black bag was corroborated by the recent track marks Clary saw on Defendant's arms, the portion of the Aubrey search warrant affidavit regarding Defendant's trading of methamphetamine for stolen items, and Defendant's statements regarding his use of methamphetamine.[2] Testimony was also presented that officers observed shotgun "chokes" in the

---

[2] Defendant does not seek to suppress his statements to law enforcement, nor has he argued that his statements to officers were involuntarily given in violation of *Miranda*.

bed of Defendant's truck, leading to a reasonable suspicion that the vehicle or its lock box may contain firearms. If officers gain new information relevant to safety or criminal conduct during a *Terry* stop, the scope of their permissible investigation may expand. *Scroggins*, 599 F.3d at 441. Here, the scope of the officers' investigation did just that and the officers' ongoing suspicions that Defendant possessed a controlled substance or firearm and that Defendant posed a danger if not handcuffed were reasonable.

Notable here is that Defendant both declined consent to search his truck and eventually revoked his consent to search the residence. He declined consent to both searches while handcuffed. The Court finds that this only further demonstrates that his offer to take officers to the residence and show them the tranquilizer was made knowingly and voluntarily, even while handcuffed. The Fifth Circuit is clear that the "reasonableness inquiry that evolves with new information" and, given the facts and circumstances here, there was nothing that dispelled officers' safety concerns and suspicions to justify removal of Defendant's handcuffs. The reasonable suspicion of criminal activity remained and only increased as time passed. *Scroggins*, 599 F.3d at 441 ("reasonable suspicion may 'ripen' or 'develop' into probable cause for an arrest if a *Terry* stop reveals further evidence of criminal conduct.").

---

Therefore, the Court does not address whether statements made to Clary or others were made during a custodial interrogation. In any event, no evidence before the Court indicates that Defendant was coerced in any way and it appears any statements were made voluntarily. The Court further notes that, even if any statements made by Defendant regarding his drug use were removed from the search warrant affidavits, there are still sufficient facts set forth to establish probable cause.

As to the initial search of the Stirrup Road property, Defendant clearly consented to the search. "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed.2d 854 (1973). To satisfy the consent exception, the Government must demonstrate that there was: (1) effective consent, (2) given voluntarily, (3) by a party with actual or apparent authority. *Scroggins,* 599 F.3d at 440. According to the testimony presented, Defendant volunteered to show officers the tranquilizer, and Defendant's keys were used to open the door to the house. Although it is unclear based on the testimony offered at the hearing whether the Stirrup Road house was Defendant's primary residence, it is clear that it was a home in which his father lived prior to his death and one over which Defendant exercised actual authority and control.

The Court further finds that the officers' search of the home did not exceed the scope of Defendant's consent. "When police enter a home based on consent or another lawful basis, and possess a reasonable, articulable suspicion that the area to be swept harbors an individual posing a danger to those on the scene, they may conduct a protective sweep of the premises." *Scroggins*, 599 F.3d at 440 (internal citations and quotations omitted). Although Defendant remained handcuffed for officer safety, Defendant's consent was voluntarily and the officers' search lasted only as long as he gave his consent. Indeed, they left the premises immediately upon Defendant's revocation of consent to be there.

The Court finds that, given the ongoing reasonable suspicion of criminal activity and the justified concerns for officer safety during the execution of the Aubrey warrant, the transportation of Defendant in a law enforcement vehicle and the entry into an unfamiliar residence, Defendant's continued detention in handcuffs was not a Fourth Amendment violation. As officers drove to, arrived at, and searched the Stirrup Road property, the reasonable suspicion of criminal activity continued and the need for officer safety continued. That officers observed potentially illegal materials during the consensual search of his residence while he was handcuffed does not alter his consent, and the information used in the search warrants for both the Stirrup Road residence and the green truck was validly obtained.

Defendant has also challenged the search warrant affidavit for the truck because it referenced "Cooke" rather than "Denton" County in the heading. At the hearing, Investigator Karissa Flowers, the affiant for the affidavit, testified that the use of an incorrect county name was her typographical error. According to Flowers, it was the result of her use of a "go by" form containing "Cooke County" and the failure to change it to "Denton County" was not intentional. As pointed out by the Government, the body of the affidavit clearly identifies the vehicle being located in Denton County. *See* Dkt. 28-4 at 4.

The Court finds that the body of the affidavit contains sufficient information regarding the location of the truck such that executing officers could locate it with reasonable effort. *United States v. Lopez*, 582 Fed. App'x 438, 443 (5th Cir. 2014) ("[T]his Court has previously upheld searches conducted pursuant to warrants with an incorrect house number, the wrong street name, and

9

even the incorrect city.") (*citing United States v. Gordon*, 901 F.2d 48, 50 (5th Cir. 1990) (even though the street name was wrong on the warrant, the good-faith exception applied because the defect was not apparent from simply looking at the warrant, "the affiant [who was] the executing officer ... had recently viewed the location in question," and "there was no possibility the wrong premises would be searched" (internal quotation marks omitted)); *United States v. Avarello*, 592 F.2d 1339, 1344 (5th Cir. 1979) (affirming denial of the motion to suppress where the warrant listed the wrong city because the description of the premises allowed "the executing officers [to] locate and identify the premises to be searched with reasonable effort"); *United States v. Darensbourg*, 520 F.2d 985, 987 (5th Cir. 1975) (collecting cases where the Fifth Circuit has upheld the denial of a motion to suppress when the address was incorrect)). The incorrect county name in the heading of the affidavit is not enough to render the warrant invalid.

Defendant also challenges the search warrant for the Stirrup Road residence because the search warrant commands the search of the "suspected vehicle" rather than "suspected premises" or the like. The Government again explains that this was a typographical error. The Court finds that the warrant and affidavit sufficiently contain a description of the premises to be searched and that it is clear that the warrant pertains to real property rather than a vehicle. Indeed, the warrant reads in full the "suspected vehicle described in said Affidavit (217 Stirrup, Rd. Tioga, Texas)." Dkt. 28-3 at 2. The affidavit further describes in detail 217 Stirrup Road as "a single story residence facing south with green composite roof" with the "numbers 217 in black letters fix[ed] above the entrance of the front door." Dkt. 28-3 at 3. That the warrant applies to a residence is clear, and the

typographical error in the warrant referencing a vehicle is insufficient to render the warrant invalid. *See id.*

As to Defendant's claim that the affiant for the Stirrup Road affidavit was later charged with possession of child pornography, there is no testimony or authority before the Court that would show that subsequent criminal charges of an affiant renders a search warrant invalid. The testimony at the hearing further supports and corroborates the allegations made in the supporting affidavit, and the facts set forth in the affidavit were sufficient to form probable cause. The Court will not recommend suppression on this ground.

The Court notes that, according to the testimony presented, a canine unit was brought to search the green truck prior to the issuance of the search warrant. The canine unit did not alert. The Government concedes that this fact was not mentioned in the search warrant affidavit for the truck. The Court will not recommend suppression on this ground either. Not only has Defendant failed to brief the issue or provide any authorities or direct argument to the Court stating any challenge, even if a negative canine alert had been included in the affidavit, the totality of the circumstances as set forth in the detailed search warrant for the truck was sufficient to form probable cause.

Moreover, under the good faith exception to the exclusionary rule, evidence is admissible if it is obtained by law enforcement officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate. *United States v. Leon*, 468 U.S. 897, 927-28 (1984). Nothing in the record and nothing presented to the Court to indicate that any of the information contained in the affidavits was deliberately false or misleading. There is no showing

of bad faith by any law enforcement officer connected to this case. Therefore, the searches will not be suppressed on based on Defendant's challenges to the warrants.

Defendant's Motion to Suppress Unlawfully Obtained Evidence (Dkt. 28) should be DENIED in its entirety.

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C.A. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

Per the agreement of the parties' at the April 27, 2015 hearing, any objections to this report shall be filed no later than **May 6, 2015.** If the final pretrial conference in this matter is continued, the parties may seek a continuance of this deadline.

**SIGNED this 4th day of May, 2015.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE