| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:14-CR-155 (1) |
| | § | UNDER SEAL |
| GARY DON FRANKS | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Gary Don Franks's ("Franks") *pro se* Motion for Compassionate Release (#85) pursuant to 18 U.S.C. § 3582(c)(1)(A), wherein Franks seeks a reduction of his sentence to time served due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government filed a response in opposition (#88). Franks subsequently filed a reply brief (#90). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, the Government's response, Probation's recommendation, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.   Background

On November 9, 2015, Franks pleaded guilty pursuant to a binding plea agreement to Counts One and Two of the Indictment. Count One of the Indictment charged him with Possession with Intent to Distribute or Dispense Less than 50 Grams of a Mixture or Substance Containing Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and Count Two charged him with Possession of a Firearm by a Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Franks committed the instant offenses while on supervised release for Possession with Intent to Distribute or Dispense Methamphetamine and Convicted Felon in Possession of a Firearm in Case No. 4:03-CR-84(21) in the Eastern District of Texas and while on parole for Burglary of

a Habitation, Robbery, and Delivery of a Controlled Substance in Case Nos. F-91-164-A, F-91-165-A, and F-91-1051-A in the 16th Judicial District Court of Denton County, Texas. On April 18, 2016, the court sentenced Franks to 180 months' imprisonment as to Count One and Count Two to run concurrently, followed by a 5-year term of supervised release, which consisted of 3 years as to Count One and 5 years as to Count 2, to run concurrently. On May 4, 2016, the court revoked Franks's supervised release in Case No. 4:03-CR-84(21) and imposed a 24-month sentence to be served consecutively to the sentence imposed in the instant case. On August 12, 2016, Franks's state parole was revoked, and he was later released from state custody to a federal detainer in 2018. Franks is currently housed at Federal Correctional Institution Talladega, located in Talladega, Alabama ("Talladega FCI"). Franks's projected release date is March 22, 2033.

II.    Analysis

    A.    Exhaustion

On December 21, 2018, President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under

>   section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of

30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Franks complied with the exhaustion requirement before filing the instant motion.  Attached to Probation's report is Franks's request to the warden where he his housed, dated July 20, 2020, seeking a reduction in sentence.  Also attached is a denial letter from Warden C. Nash, dated August 10, 2020.  The denial letter states, in part, that although Franks's concerns about COVID-19 did not warrant early release at this time, "due to being identified by the health services as having serious underlying medical conditions and being at a high risk for severe illness from COVID-19, [Franks has] been reviewed for Home Confinement under the Cares Act 2020."  On August 29, 2020, Franks submitted a request for administrative remedy, wherein he asked the warden to reconsider his request for compassionate release.  On September 15, 2020, Warden Nash denied Franks's request for reconsideration and reiterated that his "concern about being potentially exposed to or possibly contracting COVID-19 does not currently warrant an early

release from [his] sentence." Although Franks complied with the exhaustion requirement, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

As grounds for relief set forth in his motion, Franks asserts that his underlying health conditions render him especially vulnerable to COVID-19. Additionally, he maintains that his wife, Pamela Franks ("Mrs. Franks"), who has COPD [Chronic Obstructive Pulmonary Disease] and other medical problems, has no primary caregiver and he is needed at home to fulfill that role. Moreover, Franks contends that the court should consider his post-sentence rehabilitation.

B.     Medical Condition

The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

In the case at bar, Franks, age 55, states that he suffers from Hepatitis C, heart problems, and liver disease. He attaches medical records and other documentation in support of his health claims. A review of Franks's Presentence Investigation Report ("PSR"), prepared on February 11, 2016, reveals that when Probation inquired about his physical condition, he replied that he "is healthy and has no history of health problems; however, he worries that he has cancer since both his brothers died from liver cancer." Yet, BOP medical records dated January 2, 2019, reveal that

Franks was diagnosed with Hepatitis C as early as 2008. He completed treatment for Hepatitis C while incarcerated in 2018, and on January 24, 2020, test results showed that HCV RNA was not detected, indicating that he had no Hepatitis C virus in his blood stream. Franks's BOP medical records entitled Health Problems, generated on June 19, 2020, list the following "current" medical conditions: "Hepatitis C, Coronary Atherosclerosis of [Unspecified] Type of Vessel, Myopia, Astigmatism, Presbyopia, Liver Disease, Pain in Unspecified Foot, History of Noncompliance with Medical Treatment, and Family History of Other Specified Conditions." Additionally this report reflects the following medical conditions are classified as "resolved": "Hypertension, Benign Essential, Angina Pectoris, other and unspecified, [and] Congestive Heart Failure, unspecified." Franks has been prescribed a variety of medications to treat his health problems, but his medical records are replete with notations regarding his non-compliance with a series of treatment plans. BOP records further disclose that Franks is classified as a medical Care Level 2 inmate (stable, chronic care).[2]

Thus, Franks's medical conditions do not meet the criteria for compassionate release listed in the guidelines. His reported afflictions are not terminal (with an end of life trajectory within 18 months), nor do they substantially diminish his ability to provide self-care. In fact, BOP records dated October 5, 2020, indicate that Franks is housed in general population, has no medical restrictions, has regular duty work assignments, is cleared for food service, and has work details in education and pipefitting. In addition, he has been evaluated as having a "medium risk

---

[2] The BOP characterizes medical Care Level 2 inmates as follows: Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time.

recidivism level" and has a security classification of medium. Therefore, Franks has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence. Further, "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94.

       C.     Family Circumstances

Moreover, although the USSG acknowledges that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, it specifies the following qualifying conditions: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii). While the USSG does not provide a definition of "incapacitation," BOP Program Statement number 5050.50, entitled Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) defines incapacitation of an inmate's spouse or registered partner as:

> Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or
>
> A severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair.

> For these requests, the inmate should demonstrate that the inmate is the only available caregiver for the spouse or registered partner, meaning there is no other family member or adequate care option that is able to provide primary care for the spouse or registered partner.

U.S. DEP'T OF JUST., FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50 (January 17, 2019); *United States v. Collins*, No. 15-10188, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020).

Here, Franks maintains that his wife has been diagnosed with "COPD and a host of other medical alignments [sic] [and that] [s]he has no primary care provider and life is exceptionally difficult for her. She has no way of getting back and forth to doctor['s] appointments, and to the pharmacist to get the medicine she needs." Franks also contends that his wife is struggling financially to provide for herself, and if released, he would be able to contribute to the household. In support thereof, Franks submitted Mrs. Franks's 2018 and 2019 medical records, which confirms she suffers from COPD, anxiety, depressive episodes, tobacco use disorder, and mixed hyperlipidemia. Her medical records also reveal that she has received counseling regarding Exercise/Physical Activity, suggesting that she is ambulatory. Indeed, a medical record dated August 21, 2019, notes that, despite Franks's being incarcerated since 2014, Mrs. Franks is "currently sexually active" and answered "Yes" to the question of whether she had sex in the past 12 months (vaginal, oral, or anal). Furthermore, Clinician William Walkup, FNP-C, described Mrs. Franks as "alert, oriented, cognitive function intact, cooperative with exam, good eye contact, speech clear, [and] thought content without suicidal ideation, delusions." Mrs. Franks's medical records further reveal that she has two brothers, three sisters, and three children (two sons and a daughter), all of whom are healthy. Absent from Mrs. Franks's medical documentation is any indication that she suffers from a serious injury or debilitating physical illness that renders her completely disabled, or that she suffers from a severe cognitive deficit. *See United States v.*

9

*Bolden*, No. CR16-320, 2020 WL 4286820, at *5 (W.D. Wash. July 27, 2020) ("Defendant has failed to demonstrate that his spouse is incapacitated to the extent that she cannot carry on any self-care and is totally confined to a chair or bed."). Thus, from the medical records submitted to the court, Mrs. Franks does not qualify as incapacitated. Even if she qualified, it does not appear that her husband, Franks, is the only available caregiver. Mrs. Franks is 63 years old and has five siblings and three children who can potentially provide care to her. In addition, according to his PSR, Franks has a paternal half-sister who resides nearby, as well as a maternal half-sister and half-brother. Hence, Franks fails to meet the requirements for family circumstances that establish extraordinary and compelling reasons for early release from prison.

      D.      <u>Other Reasons</u>

Franks's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant

brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief."). Here, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Franks for any "other" reason. In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Franks's situation.

Franks maintains that his post-sentence rehabilitation, evidenced by a list of courses and programs he has completed, along with a book he has authored, establishes extraordinary and compelling reasons for compassionate release. While the court may consider rehabilitation efforts, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3; *accord* 28 U.S.C. § 994(t); *see United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."). Although the court finds Franks's list of accomplishments commendable, his efforts at rehabilitation are insufficient to support a sentence reduction. Thus, Franks has not presented "other reasons" establishing extraordinary and compelling reasons warranting compassionate release.

Franks expresses concerns regarding the spread of COVID-19 among the prison population and that, due to his medical conditions, he is at higher risk of suffering severe consequences of contracting the virus. As of December 28, 2020, the figures available at www.bop.gov list 36 inmates (out of a total inmsate population of 898) and 28 staff members at Talladega FCI as having confirmed positive cases of COVID-19, 177 inmates and 9 staff members who have recovered, and 2 inmates who has succumbed to the disease. Therefore, although Franks expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Woods*, No. 4:11-CR-106-SDJ, 2020 WL 6391591, at *4 (E.D. Tex. Nov. 2, 2020) (noting that "courts have concluded that an inmate's concerns about risks associated with the spread of COVID-19 are not consistent with the policy statement of the Commission as required by Section 3582(c)(1)(A)"); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a

12

sentence." (quoting *United States v. Koons*, 455 F. Supp. 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19). Thus, Franks has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to release him from prison.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94 ("[C]ompassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)."). The nature and circumstances of Franks's offenses of conviction entail his possession with intent to distribute 20.7 grams of methamphetamine [actual] and his possession of a firearm as a convicted felon. During the course of the investigation, officers learned that a large amount of methamphetamine had been observed at Franks's residence in Tioga, Texas. Franks had also been identified as a person to whom stolen

firearms had been traded in exchange for methamphetamine. After law enforcement arrived at his residence, a drug customer of Franks's drove up and consented to a search of her vehicle where investigators found methamphetamine she had purchased from Franks earlier in the week, a digital scale, and syringes. During the execution of a search warrant of Frank's residence and vehicle, investigators discovered a shotgun (reported stolen during a residential burglary), methamphetamine, a pistol, ammunition, a digital scale, drug paraphernalia, methamphetamine lab components, jewelry, and silver dollars.

Probation points out that Franks has a criminal history dating back to the 1980s of conduct similar to the instant offense as well as several thefts and burglaries and has a history of committing new law violations while under community supervision. Specifically, Franks's extensive criminal history includes prior convictions for driving with a suspended license (2), burglary of a building, theft (2), criminal mischief, unauthorized use of a motor vehicle, burglary of a habitation, robbery, delivery of a controlled substance, credit card abuse, possession with intent to distribute methamphetamine, and convicted felon in possession of a firearm. Franks previously failed to comply with terms of probation and was on supervised release and parole at the time of the instant offense. He is a career offender and has a history of poly-substance abuse starting at age 15. Hence, the court cannot conclude that Franks would not pose a danger to any other person or to the community, if released from prison at this juncture.

In addition, granting Franks compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the United States Court of Appeals for the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's not yet having served a significant

portion of his sentence. *Id.* at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id*. In the instant case, Franks has served just over 2 years of his aggregate sentence of 204 months (180 months for the instant offense and 24 months for the violation of his prior term of supervised release). Releasing Franks after he has served only approximately 12% of his sentence would similarly minimize the impact of his crimes and the seriousness of his offenses.

Furthermore, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the former United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. Since March 26, 2020, the BOP has placed 19,225 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving

their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *United States v. Donnell*, ___ F. Supp. 3d ___, No. 4:10-CR-65-SDJ-CAN, 2020 WL 5939095, at *7 (E.D. Tex. Aug. 4, 2020); *Ambriz v. United States*, 465 F. Supp. 3d 630, 633 (N.D. Tex. 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, former Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor

one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Franks's track record is similarly a poor one.

In short, Franks has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

III.  Conclusion

In accordance with the foregoing analysis, Franks's *pro se* Motion for Compassionate Release (#85) is DENIED.

SIGNED at Beaumont, Texas, this 30th day of December, 2020.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE