| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:14-CR-155 (1) |
| | § | UNDER SEAL |
| GARY DON FRANKS | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Gary Don Franks's ("Franks") *pro se* Motion for Compassionate Release (#98), wherein Franks seeks, for the second time, a reduction of his sentence. Also pending before the court is Franks's *pro se* Motion to Appoint Counsel (#99), wherein he asks for counsel to be appointed to assist him in filing a motion for compassionate release. The Government filed a response in opposition to Franks's second motion for compassionate release (#100), and Franks subsequently filed a reply (#101). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, the Government's response, Franks's reply, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motions should be denied.

I.   Background

On November 9, 2015, Franks pleaded guilty pursuant to a binding plea agreement to Counts One and Two of the Indictment. Count One of the Indictment charged him with Possession with Intent to Distribute or Dispense Less than 50 Grams of a Mixture or Substance Containing Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and Count Two charged him with Possession of a Firearm by a Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Franks committed his offenses of conviction while on supervised release for Possession

with Intent to Distribute or Dispense Methamphetamine and Convicted Felon in Possession of a Firearm in Case No. 4:03-CR-84(21) in the Eastern District of Texas and while on parole for Burglary of a Habitation, Robbery, and Delivery of a Controlled Substance in Case Nos. F-91-164-A, F-91-165-A, and F-91-1051-A in the 16th Judicial District Court of Denton County, Texas.  On April 18, 2016, the court sentenced Franks to 180 months' imprisonment on each of Counts One and Two, to run concurrently, followed by a 5-year term of supervised release, which consisted of 3 years as to Count One and 5 years as to Count 2, to run concurrently.  On May 4, 2016, the court revoked Franks's supervised release in Case No. 4:03-CR-84(21) and imposed a 24-month sentence of imprisonment to be served consecutively to the sentence imposed in the case at bar.  Franks is currently housed at Federal Correctional Institution Talladega, located in Talladega, Alabama ("Talladega FCI").  Franks's projected release date is March 22, 2033.

On September 29, 2020, Franks filed his initial motion for compassionate release (#85). On December 30, 2020, the court denied Franks's motion (#93).  Thereafter, on January 14, 2021, he appealed the court's denial of his motion for compassionate release (#94).  The Court of Appeals for the Fifth Circuit dismissed Franks's appeal as frivolous on October 13, 2021 (#97).

II.      Motion to Appoint Counsel

Franks requests the appointment of counsel to assist him in filing a motion for compassionate release under 18 U.S.C. § 3582(c).  There is no constitutional right to appointed counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (finding that "every

federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings"); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues. *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court."); *accord United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Franks is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Franks provides no basis for the court to conclude that the appointment of counsel would benefit him or the court in addressing his motion. Indeed, a motion "for compassionate release is not particularly complex factually or legally," and he has already filed two motions for compassionate release at this juncture without the assistance of counsel. *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In any event, Franks has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Franks is 56 years old and there is no indication that he is terminally ill, disabled, or otherwise a candidate for compassionate release. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Franks's motion for appointment of counsel is denied.

III.   Motion for Reconsideration

In his second motion for compassionate release, which the court construes as a motion for reconsideration, Franks does not present assert any novel substantive arguments, raise any significant factual or legal issues warranting relief, show that he is receiving inadequate health care

at the federal correctional institution where he is housed, establish that he would not pose a danger to society if released, or otherwise demonstrate that compassionate release is warranted.

When a defendant moves for compassionate release, he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at 392. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1] *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 142 S. Ct. 299 (2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

In his initial motion for compassionate release, Franks, age 56, asserted that extraordinary and compelling reasons for his release existed due to his medical condition, family circumstances, the threat of COVID-19, and his post-sentencing rehabilitation. In its Memorandum and Order, dated December 30, 2020 (#93), the court considered these factors and determined that his

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

circumstances did not constitute an extraordinary and compelling reason warranting his early release from prison. The United States Court of Appeals for the Fifth Circuit subsequently held in *Shkambi* that when a defendant files a motion for compassionate release on his own behalf, the Sentencing Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. 993 F.3d at 392; *Cooper*, 996 F.3d at 287-88. Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13). Upon reconsideration, the court again finds that Franks's medical condition, family circumstances, the threat of COVID-19, and his rehabilitation efforts do not suffice.

    A.    <u>Medical Condition</u>

As an initial matter, Franks's medical condition is not terminal, does not substantially diminish his ability to provide self-care in the institutional setting, or otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d 431 at 433. In his motion, Franks complains that he suffers from "extra large spleen called Massive Spleen Omegila," "abdominal distention," and now has osteoporosis from taking the

Moderna COVID-19 vaccine, but there is no indication in his BOP medical records that he suffers from any of these conditions. In fact, Franks's medical records show that he received the Pfizer-BioNTech Vaccine on February 2, 2021, and February 24, 2021, rather than the Moderna vaccine about which he complains. Indeed, a review of Franks's recent medical records shows that his medical diagnoses remain largely unchanged since the court's December 30, 2020, Memorandum and Order. At that time, Franks suffered from Hepatitis C (which was in remission), heart problems, and liver disease. Specifically, since his first motion, he continues to suffer from coronary atherosclerosis of unspecified type of vessel, myopia, astigmatism, and presbyopia, and he now complains of pain in his foot, which is exacerbated by walking and boots but relieved by rest and soft shoes. Franks's medical records reveal that although he now has polyarthritis, his liver disease is considered resolved and his Hepatitis C remains in remission. Franks is prescribed a variety of medications to control his medical afflictions, but his medical records reflect that he has a history of noncompliance with medical treatment. Franks continues to be classified as a BOP Medical Care Level 2 inmate. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time."

Although Franks has been diagnosed with various medical conditions, they are well-controlled by medication. Franks's BOP records reveal that he is housed in general population, is ambulatory, has no medical restrictions, has regular duty work assignments, is cleared for food service, and he currently serves as a plumber's apprentice. According to Franks's motion, he has

7

also taken a "plethora of classes," teaches ACE classes, assists other inmates in obtaining their GED, has preached in the church service 14 times, works unaided as a plumber, is a published author, and is currently working on a second book. Thus, he is able to provide self-care in the institutional setting and is not limited in his activities of daily living. Accordingly, Franks has failed to establish the existence of medical problems that would constitute extraordinary and compelling reasons to reduce his sentence.

B.  Family Circumstances

Moreover, Franks's family circumstances do not warrant compassionate release. As in his initial motion, he argues that he needs to take care of his wife, Pamela Jane Franks ("Mrs. Franks"), because she suffers from chronic obstructive pulmonary disease ("COPD") and "a host of other ailments." As explained above, although the court is not bound by § 1B1.13 or the commentary thereto, the court views the commentary as informative of its analysis as to what reasons may be sufficiently extraordinary and compelling to merit compassionate release. *See Shkambi*, 993 F.3d at 392; *see also Thompson*, 984 F.3d at 433; *Rivas*, 833 F. App'x at 558. The U.S.S.G. acknowledge that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, under the following conditions: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii). While the U.S.S.G. do not provide a definition of "incapacitation," "[f]or guidance [on what constitutes] 'incapacitation,' courts look to the BOP's non-binding Program Statement for processing compassionate release requests." *United States v. White*, No. CR16-40, 2021 WL

1721016, at *4 (E.D. La. Apr. 30, 2021); *United States v. Bolden*, No. 16-320, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020) (consulting the BOP's relevant Program Statement for guidance); *United States v. Doolittle*, No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) (same); *United States v. Collins*, No. 15-10188, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (noting that although the Program Statement is specifically meant for use by the BOP, it "provide[s] guidance for courts as well").

BOP Program Statement number 5050.50, entitled Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), defines incapacitation of an inmate's spouse or registered partner as:

> Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or
>
> A severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair.
>
> For these requests, the inmate should demonstrate that the inmate is the only available caregiver for the spouse or registered partner, meaning there is no other family member or adequate care option that is able to provide primary care for the spouse or registered partner.

U.S. DEP'T OF JUST., FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50 (Jan. 17, 2019); *Collins*, 2020 WL 136859, at *4.

In his present motion for compassionate release, Franks does not go into detail about Mrs. Franks's medical issues or provide evidence of her condition. In support of his first motion for compassionate release, however, Franks submitted Mrs. Franks's 2018 and 2019 medical records, which confirm that she suffers from COPD, anxiety, depressive episodes, tobacco use disorder,

9

and mixed hyperlipidemia. As the court has no indication that Mrs. Franks's condition has changed, the court, once again, finds that there is no evidence that she suffers from a serious injury or debilitating physical illness that renders her completely disabled, or that she suffers from a severe cognitive deficit. *See Bolden*, 2020 WL 4286820, at *5 ("Defendant has failed to demonstrate that his spouse is incapacitated to the extent that she cannot carry on any self-care and is totally confined to a chair or bed."). Thus, Mrs. Franks does not qualify as incapacitated.

In any event, even if Mrs. Franks were incapacitated, it does not appear that Franks is the only available caregiver for his wife. *See United States v. Blevins*, No. 5:09-CR-15-DCB-JCS, 2020 WL 3260098, at *5 (S.D. Miss. June 16, 2020) (denying compassionate release because defendant was not "the only available caregiver for the spouse or registered partner"). Indeed, medical records submitted with Franks's first motion for compassionate release reveal that Mrs. Franks has two brothers, three sisters, and three children—all of whom are healthy and, thus, could potentially provide care for her. Accordingly, Franks fails to meet the requirements for family circumstances that establish extraordinary and compelling reasons for early release from prison.

### C.  Rehabilitation

Franks maintains that his post-sentence rehabilitation, evidenced by the courses he has taken, the programs he has completed, the book he has published, and the work he has done as a plumber at his facility, establishes extraordinary and compelling reasons for compassionate release. While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020)

(holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act). In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)).

Thus, although Franks lists a number of commendable achievements, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov.

2, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Ore. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release). Similarly, the court hopes that Franks will continue on the path to rehabilitation, but declines to exercise its discretionary authority under § 3582 at this time based on his rehabilitation efforts. *See Lewis*, 2021 WL 4519795, at *3.

    D.    <u>COVID-19</u>

Franks expresses concerns about contracting COVID-19 while in prison. He maintains that if he contracts COVID-19 it will be fatal for him and, due to prison overcrowding, there is no way to distance himself from other inmates. Nevertheless, as of July 5, 2022, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 1,030) and 4 staff members at Talladega FCI as having confirmed positive cases of COVID-19, 297 inmates and 98 staff members who have recovered, and 5 inmates who succumbed to the disease. Thus, it appears that the facility where Franks is housed is handling the outbreak appropriately and providing adequate medical care.

Although Franks expresses legitimate concerns regarding COVID-19, he again does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Franks, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *Vasquez*, 2020 WL 3000709, at *3 ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No.

3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. To date, the BOP has administered approximately 322,933 doses of the vaccine. According to www.bop.gov, FCI Talladega, where Franks is housed, has fully inoculated 950 inmates and 173 staff members. Indeed, according to Franks's BOP medical records, he received the first dose of the Pfizer-BioNTech vaccine on February 2, 2021, and the second dose on February 24, 2021. In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19. *See United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No. 1:14-cr-00148-01-MC, 2021 WL 1895240, at *1-2 (D. Ore. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated

14

against COVID-19); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021).

    E.    <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). Franks's offenses of conviction entail his possession with intent to distribute 20.7 grams of methamphetamine (actual) and his possession of a firearm as a convicted felon.

During the course of the investigation, officers learned that a large quantity of methamphetamine had been observed at Franks's residence in Tioga, Texas. Franks had also been identified as a person to whom stolen firearms had been traded in exchange for methamphetamine.

After law enforcement arrived at his residence, one of Franks's customers showed up at the property. The customer's vehicle was searched, and investigators found methamphetamine that the customer had purchased from Franks earlier in the week, a digital scale, and syringes. During the execution of a search warrant of Franks's residence and vehicle, investigators discovered a shotgun (reported stolen during a residential burglary); methamphetamine; a pistol; ammunition; a digital scale; drug paraphernalia; methamphetamine lab components, including lab chemicals, glass beakers, tubing, and air filter masks; jewelry; and silver dollars.

Franks has an extensive criminal history beginning at age 18, which includes prior convictions for driving with a suspended license (2), burglary of a building, theft (2), criminal mischief, unauthorized use of a motor vehicle, burglary of a habitation, robbery, delivery of a controlled substance, credit card abuse, possession with intent to distribute methamphetamine, and convicted felon in possession of a firearm. Franks also failed to comply with two previous terms of probation and violated his parole on a number of occasions. Indeed, he was on supervised release and parole at the time he committed his offenses of conviction. In *Boyd*, the defendant had a similar history of violating probation, including committing the offense of conviction while on probation. 2021 WL 5094903, at *3. The court found that "defendant's history of violating probation calls into question his respect for the law and whether he would abide by his conditions of supervised release in this case if his motion for compassionate release were granted." *Id*. This court shares the same concerns in reference to Franks.

Moreover, Franks's Presentence Investigation Report reflects that he is a career criminal and has a history of poly-substance abuse starting at age 15, including the use of alcohol, cocaine, cocaine base, methamphetamine, heroin, hydrocodone, opium, LSD, mushrooms, peyote, and

valium. In short, Franks's "criminal history and conduct reflect an unabated propensity for crime." *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021).

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *see United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022). Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release under the circumstances. *Chambliss*, 948 F.3d at 693-94; *accord Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal"). In view of the nature and circumstances of his offenses of conviction, his extensive criminal history, and his history of poly-substance abuse, the court cannot conclude that Franks's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United*

17

*States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Franks's track record is similarly a poor one. In this instance, there is no reason to believe that Franks would not revert to his prior drug-dealing and drug-abusing behavior or engaging in other criminal activities if released from prison at this time. In sum, the court finds that Franks's circumstances fail to meet the extraordinary and compelling standard necessary for compassionate release, and his motion for compassionate release must be denied.

IV.     Conclusion

In accordance with the foregoing analysis, Franks's *pro se* Motion for Compassionate Release (#85) and *pro se* Motion to Appoint Counsel (#99) are DENIED.

SIGNED at Beaumont, Texas, this 6th day of July, 2022.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE